IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Sandra McCaskill Peay, | ) | C/A No. 0:10-2104-JFA-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Sandra McCaskill Peay ("Peay"), brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## ADMINISTRATIVE PROCEEDINGS

In November 2005, Peay applied for DIB, alleging disability beginning August 22, 2005. Peay's application was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on August 20, 2007, at which Peay, who was represented by George A. Reeves, III, Esquire, appeared and testified. The ALJ, after hearing testimony from Peay's husband and a vocational expert, issued a decision on April 9, 2008 denying benefits and concluding that Peay was not disabled. (Tr. 8-18.)

Peay was fifty-two years old at the time of her alleged disability onset date. (Tr. 110.) She has a high school education and past relevant work experience as an inspection clerk. (Tr. 124, 128.) Peay alleges disability since August 22, 2005 due to chronic back and neck pain as well as high blood pressure. (Tr. 123.)

The ALJ found as follows:

1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2.     The claimant has not engaged in substantial gainful activity since August 22, 2005, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

          *     *     *

3.     The claimant has the following severe impairment:  cervical disc disease, degenerative disc disease in the lumbar spine and carpal tunnel syndrome (20 CFR 404.1520(c)).

          *     *     *

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

          *     *     *

5.     After careful consideration of the entire record, I find that due to objective impairments and subjective complaints, which in combination would reduce her residual functional capacity but would allow the exertional and non-exertional ability to lift 10 pounds occasionally and 5 pounds frequently; sit for 6 hours in an 8-hour workday; stand and walk for 2 hours in an 8 hour workday; pushing and pulling would be limited to 10 pounds; occasional climbing, balancing, stooping, kneeling, crouching and crawling but no climbing of ladders, ropes or scaffolds.  Reaching, handling and fingering would not be limited except for overhead reaching or rapid repetitive hand movements at a constant pace in an environment free from dangerous moving machinery.

          *     *     *

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565).

          *     *     *

7.     The claimant was born on [REDACTED], 1953 and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.     The claimant has acquired work skills from past relevant work (20 CFR 404.1568).

\* \* \*

10.    Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1560(c), 404.1566 and 404.1568(d)).

\* \* \*

11.    The claimant has not been under a disability, as defined in the Social Security Act, from August 22, 2005 through the date of this decision (20 CFR 404.1520(g)).

(Tr. 10-18.)  On June 11, 2010, the Appeals Council denied Peay's request for review, making the decision of the ALJ the final action of the Commissioner.  (Tr. 1-3.)  This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973).  The regulations require the ALJ to consider, in sequence:

(1)    whether the claimant is engaged in substantial gainful activity;

(2)    whether the claimant has a "severe" impairment;

(3)    whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

Page 3 of 15



(4)     whether the claimant can perform [her] past relevant work; and

(5)     whether the claimant's impairments prevent [her] from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589.  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775.

**ISSUES**

Peay raises the following issues for judicial review:

I.      The Appeals Council erred in affirming the Administrative Law Court's determination that plaintiff did not have an impairment or combination o[f] impairments that meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

II.     The Appeals Council erred in affirming the Administrative Law Court's determination that plaintiff was not disabled under 20 CFR 1520(a)(ii) and able to work because of her skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy.

(Pl.'s Br., ECF No. 9.)

**DISCUSSION**

A.      **The Listings**

At Step Three of the sequential analysis, the Commissioner must determine whether the claimant has an impairment that meets or equals the requirements of one of the Listings and is therefore presumptively disabled.  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis added).  It is not enough that the impairments have the diagnosis of a listed impairment;

the claimant must also meet the criteria found in the Listing of that impairment.  20 C.F.R. § 404.1525(d).  The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. 20 C.F.R. § 404.1508.

At Step Three, the ALJ found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 10.)  The ALJ stated that consideration was given to Section 1.00 (musculoskeletal system) of the Listings and specifically found that "the medical records revealed no stenosis or myelopathy and no neurologic compression." (Id.)  The ALJ also stated that "[f]ollow-up x-rays revealed the C5-6 and C6-7 levels solidly fused" and that "[t]here is no evidence that [Peay] has an impairment resulting in an inability to ambulate effectively." (Id.)

Peay argues that the ALJ erred in determining that Peay's impairments did not meet the severity level of a listed impairment, specifically the Listing for Section 1.00.  It appears that Peay is alleging that this determination was not supported by substantial evidence because Peay did not have the ability to ambulate effectively.[1]  In support of her assertions, Peay relies upon her testimony and the opinions of Dr. Robert E. Brabham and Dr. J. Carl Kearse.

### 1.    Peay's Testimony

Peay argues, based in part on her testimony, that the ALJ erred in failing to find that her impairments meet the severity level of a listed impairment.  In support of her argument, Peay points

---

[1] Peay specifically contends that there is substantial evidence in the record to demonstrate that she meets the musculoskeletal impairment Listing; however, the proper standard is whether the *ALJ's decision* is supported by substantial evidence.  Therefore, the court has reviewed this argument as well as her subsequent arguments under this standard.



to portions of her testimony that demonstrate that she experienced pain that prevented her from ambulating effectively and performing fine and gross movements effectively on a sustained basis and that this pain lasted for at least twelve months.  (Pl.'s Br. at 4-5, ECF No. 9 at 4-5.)

The ALJ found Peay's testimony not credible.  Specifically, he found that "[t]he record does not contain any opinions from treating or examining physicians indicating that [Peay] is disabled or even has limitations greater than those determined in this decision." (Tr. 15-16.)  The ALJ also noted that Peay's testimony conflicted with that of her husband.  (Tr. 16.)  Further, the ALJ noted that while Peay testified that she drops things, no complaints of dropping things were reflected in the medical records following Peay undergoing bilateral carpal tunnel release.  (Tr. 15.) Additionally, the ALJ observed that Peay's activities of daily living "are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations."  (Tr. 16.)

In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  In this matter only the second step is at issue,[2] during which the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects her ability to work." Id.  In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's

_____

[2] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).



statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers." Id. Further, "[i]n analyzing a claimant's subjective complaints, such as pain, an ALJ must consider: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the condition; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)).

Peay has put forth no argument demonstrating that the ALJ's decision to discount Peay's testimony was unsupported by substantial evidence or controlled by an error of law. Accordingly, upon review of the record the court finds that Peay has failed to demonstrate, or even allege, that the ALJ erred in evaluating Peay's credibility. See SSR 96-7p; Craig, 76 F.3d at 595; Gowell, 242 F.3d at 796; see also Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (*per curiam*) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints); Flowers v. Apfel, 1999 WL

150491, at *2 (4th Cir. 1999) (Table) (finding that a claimant's alleged limitations were not supported by the record when they were never reported to his treating physician). Moreover, the court may not substitute its judgment for the ALJ's. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence). Furthermore, as Peay has failed to demonstrate that the ALJ erred in discounting her credibility, Peay has failed to show that the ALJ's determination that her impairments did not meet the severity level of a listed impairment was unsupported by substantial evidence based on her testimony.

### 2.    Physician Opinions

Peay also relies on the opinions of Dr. Robert E. Brabham and Dr. J. Carl Kearse to support her argument that the ALJ's determination that she did not meet the severity level of a listed impairment is unsupported by substantial evidence.

Peay first points out that Dr. Brabham, a vocational consultant who reviewed Peay's appeal following the denial of her claim for state disability retirement benefits, recommended that her application for disability benefits be approved. Dr. Brabham concluded in his October 2005 report that, based on Peay's medical evidence and testimony, "there is sufficient evidence to confirm that there has been no significant change in [Peay's] abilities, and [Peay] is no longer able to perform her job duties as an Inspection Clerk." (Tr. 195.) Peay appears to argue that Dr. Brabham's conclusion supports a finding that Peay was unable to perform any work. (Pl.'s Br. at 5, ECF No. 9 at 5.)



The ALJ considered Dr. Brabham's opinion that Peay could no longer perform her job duties as an inspection clerk and found it to be consistent with the ALJ's determination that Peay was unable to perform her past relevant work. (Tr. 16.) Additionally, the ALJ noted that Dr. Brabham stated that, with regard to Peay's condition, there was hope for improvement and that Peay's claim should be reviewed in three years. (Tr. 14.)

To the extent that Peay relies on Dr. Brabham's disability evaluation, it is clear that the ALJ considered this evaluation with regard to Peay's ability to perform her past work. Dr. Brabham's disability determination was made in recommending that Peay be awarded *state* disability retirement benefits by the South Carolina Retirement System ("SCRS"). However, the SCRS defines disability more narrowly than the Social Security Administration. Compare S.C. Code Ann. § 9-1-1540 (indicating that one of the requirements for disability retirement includes that the system "certif[y] that the member is mentally or physically incapacitated for the further performance of duty"); with 20 C.F.R. § 404.1505(a) (defining disability as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). Additionally, even if the SCRS determined that Peay was eligible for state disability retirement benefits, a determination of disability by any nongovernmental agency or any other governmental agency is not binding on the Social Security Administration. See 20 C.F.R. § 404.1504.

Based on all of the foregoing, Peay has failed to demonstrate that the ALJ erred in evaluating or weighing Dr. Brabham's opinion.

Peay also argues that, although Dr. Kearse, Peay's treating physician, opined that Peay was unable to work due to chronic back pain, the ALJ failed to afford controlling weight to his opinion. (Pl.'s Br. at 5, ECF No. 9 at 5.)  Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  See 20 C.F.R. § 404.1527(d)(2). However, "the rule does not require that the testimony be given controlling weight."  Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam).  Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list:  (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist."  Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).  In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion.  Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

In his order, the ALJ discussed the treatment notes of Dr. Kearse that revealed that Peay had complained to him of chronic neck and back pain.  Dr. Kearse's notes indicated that in September 2003 Peay underwent conservative therapy, including chiropractic treatment, but reported no significant improvement.  In August 2004, Peay reported to Dr. Kearse that her work aggravated her pain and that she was going to apply for disability.  Dr. Kearse's assessment of Peay at that time was occipital neuritis and chronic back pain from osteoarthritis and disc disease.  On April 19, 2005, Peay reported to Dr. Kearse that she had applied for state disability, but on August 22, 2005 reported that she had been turned down for state disability and would try to appeal.  The ALJ observed that

on September 20, 2005, Dr. Kearse indicated that Peay could do no work due to chronic back pain. (Tr. 12, 249.)  The ALJ found Dr. Kearse's opinion to be "quite conclusory" and noted that it "provid[ed] very little explanation of the evidence relied on in forming that opinion."  (Tr. 16.) Accordingly, the ALJ's order demonstrates that the ALJ discussed Dr. Kearse's opinion and provided reasons for discounting Dr. Kearse's opinion; the ALJ clearly determined Dr. Kearse's opinion to be unsupported.

Upon review of the record, the court finds that Peay has failed to demonstrate, or provide sufficient support for any allegation, that the ALJ erred in declining to give Dr. Kearse's opinion controlling weight.  See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (upholding the ALJ's finding that two treating physicians' opinions were entitled to minimal weight, in part, because the opinions were in the form of a checklist, unsupported by objective evidence, and based on the claimant's subjective complaints); Charles v. Barnhart, 375 F.3d 777, 783 (8th Cir. 2004) ("A treating physician's opinion deserves no greater respect than any other physician's opinion when the treating physician's opinion consists of nothing more than vague, conclusory statements."); Bean v. Chater, 77 F.3d 1210, 1213 (10th Cir. 1995) (approving an ALJ's rejection of physician's opinion that claimant had "severe" limitations in standing, walking, etc., in part, because the opinion was generic); see also 20 C.F.R. § 404.1527(e) (stating that opinions that a claimant is "disabled" or "unable to work" are reserved to the Commissioner); Sullivan v. U.S. Comm'r Soc. Sec. Admin., 2009 WL 854650 (W.D. La. Mar. 26, 2009) (unpublished) (finding that the ALJ did not err in discounting a treating physician's "one-paragraph letter that was not specific as to any mental limitations").

Based on the foregoing, Peay has failed to demonstrate that the ALJ erred in either evaluating or weighing the opinions of Dr. Brabham and Dr. Kearse.  Accordingly, the court finds that Peay has failed to show that the ALJ's determination that her impairments did not meet the severity level of a listed impairment was unsupported by substantial evidence based on these opinions.

**B.**    **Residual Functional Capacity ("RFC")**

An RFC "is the most [a claimant] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1).  In assessing RFC, an ALJ should scrutinize "all of the relevant medical and other evidence."  See 20 C.F.R. § 404.1545(a)(3).  SSR 96-8p further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's RFC.  See SSR 96-8p, 1996 WL 374184.  The RFC assessment must be based on all of the relevant evidence in the record.[3]  Id.  The ALJ must address both the individual's exertional and nonexertional capacities.  Id. at *5-6.  Further, the assessment must include a narrative discussion describing how the evidence supports the ALJ's conclusion.  Id. at *7.

Peay argues that the ALJ erred in finding that Peay had the residual functional capacity to perform sedentary work.  Peay asserts that substantial evidence in the record demonstrates that Peay, given her level of chronic pain and limitations in her mobility, would not be able to sustain the type of work described by the vocational expert.  In support of her assertion, Peay again relies on the opinion of Dr. Brabham that Peay be awarded state disability benefits and Peay's allegations that she

---

[3] This evidence includes:  medical history, medical signs and laboratory findings, the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication), reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment, evidence from attempts to work, need for a structured living environment, and work evaluations, if available.  SSR 96-8p, 1996 WL 374184, *5.



experiences numbness in picking up and holding items and that she is unable to sit or stand for long periods of time.

As discussed above, the ALJ found Peay's testimony to be not credible. Additionally, as discussed above, the ALJ considered Dr. Brabham's opinion that Peay could no longer perform her job duties as an inspection clerk and found it to be consistent with the ALJ's determination that Peay was unable to perform her past relevant work. Therefore, the court finds that Peay has failed to demonstrate that the ALJ's finding with regard to Peay's residual functional capacity was unsupported by substantial evidence or controlled by an error of law.

## RECOMMENDATION

For the foregoing reasons, the court finds that Peay has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

October 20, 2011
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).